David W. Marston Jr. (admitted pro hac vice)
Dana E. Becker (to be admitted)
Ramin Afshar-Mohajer (to be admitted)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001
dmarston@morganlewis.com
dana.becker@morganlewis.com
rafshar-mohajer@morganlewis.com

Philip R. Higdon (Bar No. 003499)
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Telephone:  (602) 351-8468
Facsimile:  (602) 648-7168
PHigdon@perkinscoie.com

**Attorneys for Defendant Pearson Education, Inc.**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **TOM BEAN and DENNIS KUNKEL MICROSCOPY, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**PEARSON EDUCATION, INC.**<br><br>Defendant. | No.  CV 11-08030 PCT PGR<br><br><br>**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................. 1

III. ARGUMENT ...................................................................................................... 3

    A. The Standard for Preliminary Injunctive Relief Is High .............................. 3

    B. Plaintiffs Cannot Demonstrate Imminent Irreparable Harm Required
        to Obtain Injunctive Relief ............................................................................ 3

        1. Plaintiffs' delay in seeking an injunction proves there is no
           risk of imminent irreparable harm ...................................................... 4

        2. Plaintiffs cannot establish irreparable harm because, as
           another district court put it, "this is a money case" .......................... 5

        3. Plaintiffs' unsupported speculation of "future infringement"
           does not establish imminent irreparable harm ................................... 7

        4. Plaintiffs' "forced licensing" theory does not support a finding
           of irreparable harm ............................................................................. 8

        5. Plaintiffs' "criminal victim" theory is unfounded ............................ 9

    C. Plaintiffs Have Not Established a Likelihood of Success on the
        Merits .......................................................................................................... 10

    D. The Balance of Equities Militates Against the Award of a
        Preliminary Injunction ............................................................................... 12

    E. Public Policy Weighs in Favor of Ensuring Students Have Adequate
        And Ongoing Access to Textbooks While Protecting Copyright
        Holders' Rights with Adequate Legal Remedies ....................................... 15

IV. CONCLUSION ................................................................................................. 17

i

1

## **TABLE OF AUTHORITIES**

2

### **FEDERAL CASES**

3

*Abend v. MCA, Inc.*, 863 F.2d 1465 (9th Cir. 1988),
    *aff'd sub nom. Stewart v. Abend*, 495 U.S. 207 (1990) ...................................... 8, 15

4

*Andersson v. Sony Corp. of America*, No. 96 Civ. 7975 (RO),
    1997 WL 226310 (S.D.N.Y. May 2, 1997) ............................................................ 14

5

6

*Belushi v. Woodward*, 598 F. Supp. 36 (D.D.C. 1984) ................................................ 14, 15

7

*Blake v. Irwin Mortg.*, No. CV-10-2435-PHX-GMS,
    2011 WL 98538 (D. Ariz. Jan. 12, 2011) .......................................................... 10, 11

8

9

*Caribbean Marine Services Co., Inc. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1998) ................................................................................... 4

10

*Citibank, N.A., v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) .............................................. 4

11

*Designer Skin, LLC, v. S&L Vitamins, Inc.*, No. CV 05-3699,
    2008 WL 4174882 (D. Ariz. Sept. 5, 2008) ........................................................... 9

12

*Dowling v. United States*, 473 U.S. 207 (1985) ........................................................... 9

13

*Dun v. Lumbermen's Credit Ass'n*, 209 U.S. 20 (1908) ............................................... 8

14

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) .......................................... 3, 5, 8

15

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980) ................................................ 7

16

*Gidatex, S.R.L. v. Campaniello Imports, Ltd.*,
    13 F. Supp. 2d 417 (S.D.N.Y. 1998) ...................................................................... 4

17

18

*Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466 (9th Cir. 1984) ........................ 7

19

*Gowan Co., LLC v. Aceto Agriculture Chemicals*,
    No. CV-09-1124-PHX-JAT, 2009 WL 2028387 (D. Ariz. July 10, 2009) ...... *passim*

20

*Klein v. City of Laguna Beach*, 381 Fed. App'x. 723 (9th Cir. 2010) ........................... 10

21

*Lavenue v. Edmunds*, No. CV 10-1479-PHX-DGC, 2010 WL 2838383
    (D. Ariz. July 20, 2010) ....................................................................................... 11

22

23

*Los Angeles Mem. Coliseum Comm'n v. National Football League*,
    634 F.2d 1197 (9th Cir. 1980) ............................................................................. 12

24

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ........................................................... 3, 10

25

*Metropolitan-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) .................................................................. 7

26

27

*Microsoft Corp. v. Marturano*, No. 1:06-cv-1747,
    2009 WL 1530040 (E.D. Cal. May 27, 2009) ........................................................ 9

28

*Przybylski v. Stumpf*, No. CV-10-8073-PCT-GMS,
2010 WL 2025393 (D. Ariz. May 19, 2010) ........................................................ 10

*Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1 (1974) ............................. 7

*Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966) ..... 15, 16

*Slide-Lok Modular Storage System v. Flexmar Coatings*, LLC, No. CV 08-0279-
PHX-MHM, 2008 WL 4649035 (D. Ariz. Oct. 21, 2008) .................................. 3, 17

*Solidus Networks, Inc. v. Excel Innovations, Inc.* (*In re Excel Innovations, Inc.*),
502 F.3d 1086 (9th Cir. 2007) ........................................................................... 7

*Trust Co. Bank v. Putnam Publ'g Grp.,* Inc., No. CV 87 07393,
1988 WL 62755 (C.D. Cal. Jan. 4, 1988) ...................................................... 14, 15

*United States v. Hernandez*, 952 F.2d 1110 (9th Cir. 1991) ............................................ 9

*Windgate Software, L.L.C. v. Minn. Computers, Inc.*,
504 F. Supp. 2d 582 (D. Minn. 2007) ............................................................ 6, 7

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7,
129 S. Ct. 365 (2008) ............................................................................ 3, 4, 7, 12

*Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*,
202 F.R.D. 612 (D. Ariz. 2001) ....................................................................... 11

### STATE CASES

*Pocket Books, Inc. v. Dell Publ'g*, 267 N.Y.S.2d 267 (1966) ........................................ 15

### FEDERAL STATUTES AND RULES

17 U.S.C. § 506 ............................................................................................................. 9

17 U.S.C. § 507 ........................................................................................................... 11

Federal Rule of Civil Procedure 65 ............................................................................ 15

### STATE STATUTES

Ala. Code 1975 § 16-36-70 ........................................................................................ 16

Cal. Educ. Code § 60000 ..................................................................................... 12, 13

Cal. Educ. Code § 60119 ............................................................................................ 16

iii

1

## I.     INTRODUCTION

This is a copyright infringement case.  Plaintiffs Tom Bean ("Bean") and Dennis Kunkel Microscopy, Inc. ("Kunkel") (collectively "Plaintiffs") are professional photographers who make their living licensing stock photographs to publishers, including Defendant Pearson Education, Inc. ("Pearson"), a publisher of educational textbooks and other materials.  Plaintiffs allege that Pearson used photographs in excess of the print quantities set forth in invoices and published certain photographs without permission, and now seek a preliminary injunction to halt distribution of Pearson's textbooks and other materials.  Plaintiffs have not come forward with evidence to support their print overrun allegations or to sustain the substantial burden required for injunctive relief, and the motion for preliminary injunction must therefore be denied.  Most significantly, Plaintiffs cannot establish imminent irreparable harm because they knew about their claims for at least 18 months before seeking injunctive relief and they have an adequate remedy at law in the form of money damages for any unauthorized use.

## II.    FACTUAL BACKGROUND

Plaintiffs are professional photographers who make a living licensing their stock photographs for non-exclusive use.  *See* Docket No. 4 at 8.  Over the years, Pearson has requested – and uniformly been granted – licenses from Plaintiffs or their agents to publish photographs in its publications.  *See* Declaration of Julie Orr (attached hereto as Exhibit A, the "Orr Declaration") ¶ 5; *accord* Docket No. 4, Ex. B ¶ 8 ("Bean, Inc. granted Pearson the limited permissions requested."); Ex. C ¶ 7 ("Kunkel, Inc. granted Pearson the limited permissions requested.").  The average fee Pearson paid for the use of photographs from Bean was approximately $180 per image, and the average license fee Pearson paid for the use of Kunkel's photographs was between $250 and $350 per image.  Orr Declaration ¶ 7.  Pearson's textbooks contain hundreds of photographs.  *Id.* ¶ 8.  In general, only a handful – and often only one – of Plaintiffs' photographs are included in any one textbook, and the photographs usually amount to only a fraction of a page in a several-hundred-page textbook.  *Id.* ¶ 8.

1
2
3
4
5
6
7
8
9
10
11
12

On February 25, 2011, Plaintiffs filed a Complaint alleging "upon information and belief" that Pearson used their photographs in excess of print quantities stated in the invoices.  Docket No. 1 ¶¶ 13, 16.  Plaintiffs contend that Pearson intentionally misrepresented print quantities in order to obtain lower license fees.  *Id.* ¶¶ 13-14.  In addition, Plaintiffs allege that Pearson willfully infringed their copyrights in certain instances by using photographs without permission.  *Id.* ¶ 17.  The Complaint asserts claims for copyright infringement and common law fraud.  *Id.* ¶¶ 21-26.  Plaintiffs also moved for a preliminary injunction to halt distribution of Pearson's textbooks and other materials.  *See* Docket No. 4.  While Plaintiffs do not request the retrieval of textbooks from schools, they seek to enjoin the reproduction, sale, display and distribution of Pearson's publications to schools and other customers – a massive, extremely expensive and disruptive undertaking.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Notably, Plaintiffs have not identified a single instance in which Pearson exceeded the print quantity set forth in an invoice.  Rather, Plaintiffs attach to their Complaint spreadsheets listing hundreds of photographs Pearson allegedly licensed from them or their agents over the last 15 years.  Docket No. 1, Exs. A-1, A-2 & B.  (These spreadsheets undermine Plaintiffs' fraud claim because they show that the print quantities Pearson requested ranged from 1,000 to 500,000 copies and were not intentionally set to obtain the lowest license fee.)  Plaintiffs claim "discovery will show" that Pearson used certain photographs listed in the spreadsheets beyond the limits set forth in the invoices.  Docket No. 4 at 4.  Plaintiffs identify just one specific example of alleged copyright infringement concerning the use of their photographs in a *Science Explorer* textbook distributed in China, which Bean learned of in 2009.  *Id.* at 2-3; Ex. B ¶ 11.  Plaintiffs concede however that Pearson itself brought this instance to their attention, stating that "permission was inadvertently not requested" for this particular publication and that Pearson sought to obtain permission.  *Id.* at 2-3.

27
28

III.   **ARGUMENT**

A.   **The Standard for Preliminary Injunctive Relief Is High**

A preliminary injunction is an "extraordinary and drastic remedy . . . 'that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Slide-Lok Modular Storage Sys. v. Flexmar Coatings, LLC*, No. CV 08-0279-PHX-MHM, 2008 WL 4649035, at *2 (D. Ariz. Oct. 21, 2008) (quoting *Mazurek v. Armstrong*, 520 U.S. 968 (1997)). An injunction is not automatic, even in cases where the plaintiff establishes copyright infringement. As the U.S. Supreme Court recently stated: "[T]his Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93 (2006).

To obtain the extraordinary remedy of a preliminary injunction, a plaintiff must establish four factors: "(1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest." *Gowan Co., LLC v. Aceto Agric. Chems.*, No. CV-09-1124-PHX-JAT, 2009 WL 2028387, at *3 (D. Ariz. July 10, 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365 (2008)). The Supreme Court has clarified that a district court's analysis of these factors must not be perfunctory; each injunction factor requires rigorous analysis. *Winter*, 129 S. Ct. at 378. Although Plaintiffs acknowledge the substantial burden they face to obtain injunctive relief, they fail to meet any of the requisite factors. Accordingly, their motion for a preliminary injunction should be denied.

B.   **Plaintiffs Cannot Demonstrate Imminent Irreparable Harm Required to Obtain Injunctive Relief**

Plaintiffs concede that, in light of the Supreme Court's holding in *eBay*, there is no presumption of irreparable harm in copyright cases, even upon a finding of copyright infringement. Docket No. 4 at 6-7 (citing *eBay*, 547 U.S. at 391). A plaintiff must establish more than a possibility of irreparable harm in order to justify a preliminary

3

1  injunction; a plaintiff must prove "irreparable injury is ***likely*** in the absence of an

2  injunction." *Winter*, 129 S. Ct. at 375 (emphasis in original). As Judge Teilborg

3  explained, a plaintiff must establish "that irreparable harm is real, imminent and

4  significant – not merely speculative or potential – with admissible evidence and a clear

5  likelihood of success." *Gowan*, 2009 WL 2028387, at *5. Because Plaintiffs cannot meet

6  this standard, their motion for injunctive relief must be denied.

7         **1.**    **Plaintiffs' delay in seeking an injunction proves there is no risk**
   <u>**of imminent irreparable harm**</u>

8

9        "Injunctions go to the speedy, or at least the diligent." 4 Melville B. Nimmer &

10  David Nimmer, *Nimmer on Copyright* §14.06[A][3][c] (Matthew Bender rev. ed. 2010).

11  Courts consider the immediacy of the threatened injury in determining whether to grant

12  injunctive relief. *See, e.g.*, *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668,

13  675 (9th Cir. 1998). A plaintiff's delay in seeking a preliminary injunction undermines

14  any claim of imminent irreparable harm and bars this extraordinary remedy. *See, e.g.*,

15  *Citibank, N.A., v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (vacating preliminary

16  injunction where plaintiff waited at least ten weeks after learning of alleged infringement

17  before seeking injunctive relief); *Gowan,* 2009 WL 2028387, at *5 (three-month delay in

18  filing motion for preliminary injunction barred claim of irreparable harm); *Gidatex, S.R.L.*

19  *v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) ("[C]ourts

20  typically decline to grant preliminary injunctions in the face of unexplained delays of

21  more than two months.").

22        Here, Kunkel did not seek injunctive relief for at least 18 months after learning of

23  Pearson's alleged infringement. Kunkel first approached Pearson about his claims in

24  August 2009. Declaration of Orr ¶ 9. As a result of those discussions, on December 15,

25  2010, Pearson and Kunkel entered into a Settlement Release and License Agreement

26  pursuant to which ***Kunkel released all claims concerning photographs licensed to***

27  ***Pearson during the prior six years***. *Id.* ¶ 10. As part of this settlement, Kunkel granted

28  Pearson a "retroactive, continuing and future, world-wide royalty free right and license" to

1  reproduce the photographs subject to the agreement.  *Id.*.  As a result, Kunkel cannot

2  assert claims or obtain injunctive relief for photographs he licensed to Pearson during the

3  last six years.  A preliminary injunction is not warranted for other claims Kunkel may

4  have because even if the claims could somehow survive the three-year statute of

5  limitations for copyright infringement, Kunkel clearly is not suffering imminent

6  irreparable harm with respect photographs licensed more than six years ago.

7  Similarly, Bean waited at least a year after he claims to have learned of Pearson's

8  alleged infringement before seeking injunctive relief.  Bean admits that he has known

9  about his claims against Pearson since 2009.  *See* Docket No. 4, Ex. B ¶ 11 ("In 2009, I

10 learned Pearson printed my Photographs in textbooks entitled *Science Explorer*,

11 distributed in China, with absolutely no license at all.").  Nevertheless, Bean did not seek

12 injunctive relief following Pearson's disclosure in 2009.  In fact, Bean previously asserted

13 similar copyright infringement claims for alleged print overruns against another publisher

14 in 2007 and 2010.  *See Bean v. Houghton Mifflin Harcourt Publ'g Co.*, No. 3:07-CV-

15 08063-PCT-JAT (filed July 26, 2007); *Bean v. Houghton Mifflin Harcourt Publ'g Co.*,

16 No. 3:10-CV-08034-PCT-DGC (filed Feb. 22, 2010).  Bean did not seek a preliminary

17 injunction in those cases, and his delay in filing a motion in this case is dispositive on the

18 issue of imminent irreparable harm.

19 Plaintiffs' failure to seek injunctive relief for more than 18 months after learning of

20 the alleged infringement proves there is no risk of imminent irreparable harm required to

21 sustain a motion for preliminary injunction.

22         **2.**      **Plaintiffs cannot establish irreparable harm because, as another**

23                   **district court put it, "this is a money case"**

24 In order to establish irreparable harm, a plaintiff must prove "that remedies

25 available at law, such as monetary damages, are inadequate to compensate for [his or her]

26 injury."  *eBay*, 547 U.S. at 391.  Here, monetary damages are undoubtedly an adequate

27 remedy.  Plaintiffs acknowledge they "are in the business of licensing photographs," and

28 it is undisputed that Plaintiffs licensed their photographs to Pearson in exchange for

money.  *See* Docket No. 4 at 8.  Plaintiffs' own documents make clear that the license fee for a particular photograph varies based upon the number of copies to be printed.  *See* Docket No. 1, Ex. C (identifying different license fees for different print quantities); http://www.denniskunkel.com/imageuse.php (attached hereto as Exhibit B) (stating that "license fees are based on several parameters such as media, size, and exposure").  In addition, the invoices Pearson received from Plaintiffs' agents often include liquidated damages provisions that impose monetary penalties for any unauthorized use.  Orr Declaration ¶ 4 (the invoices of Corbis, one agency that licensed Plaintiffs' photographs to Pearson, provide that Corbis "reserves the right to bill You (and You hereby agree to pay) ten (10) times the license fee for any unauthorized use").

Furthermore, by accepting money from Pearson to settle claims concerning photographs licensed during the last six years, Kunkel implicitly acknowledged that money damages are an adequate remedy for any unauthorized use.  *See* Orr Declaration ¶ ¶ 10-11.  The Settlement Release and License Agreement between Pearson and Kunkel, which Pearson is submitting to the Court under seal, did not enjoin Pearson from using Kunkel's photographs.  On the contrary, Kunkel granted Pearson a "retroactive, continuing and future, world-wide royalty free right and license" to use the photographs subject to the agreement.  *See id.*  Kunkel cannot argue that money is inadequate to resolve claims he may have for conduct occurring prior to May 2005, when it was more than adequate to resolve his more recent copyright infringement claims.

In other words, "[t]his is a money case."  *See Windgate Software, L.L.C. v. Minn. Computers, Inc.*, 504 F. Supp. 2d 582, 587 (D. Minn. 2007).  The typical transaction with stock photographers such as Bean and Kunkel is automatic – they accept and indeed welcome licenses (at least from textbook publishers) provided the license fee is satisfactory.  To the extent Pearson printed publications in excess of the quantities stated in the licenses, any harm to Plaintiffs is purely monetary and can be adequately remedied with money damages.  Therefore, there is no possibility of irreparable harm that could justify a preliminary injunction.  *Gowan*, 2009 WL 2028387, at *5 ("[e]conomic damages

1    are not traditionally considered irreparable because the injury can later be remedied by a

2    damage award"); *see also Windgate Software*, 504 F. Supp. 2d at 587 ("When a party's

3    alleged injury can be remedied in a suit for money damages, the party does not

4    demonstrate irreparable harm.").

5                    **3.    Plaintiffs' unsupported speculation of "future infringement" does
                            not establish imminent irreparable harm**

6

7            Plaintiffs argue that "[w]ithout an injunction, [they] will suffer irreparable harm

8    because legal remedies are insufficient to compensate them for Pearson's future

9    infringement of their work."  Docket No. 4 at 8.  Plaintiffs did not, however, come

10   forward with any evidence that Pearson has infringed their copyrights, much less any

11   evidence to substantiate a threat of future infringement.[1]  Plaintiffs have not even

12   established that Pearson is presently using their photographs in any of its current

13   publications.[2]  Plaintiffs' unsupported speculation about a "threat of future infringement"

14   is insufficient to establish irreparable harm.  *See Solidus Networks, Inc. v. Excel*

15   *Innovations, Inc. (In re Excel Innovations, Inc.)*, 502 F.3d 1086, 1098 (9th Cir. 2007)

16   ("Speculative injury cannot be the basis for a finding of irreparable harm." (citing

17   *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984))).

18   Plaintiffs' failure to come forward with any evidence of continuing infringement is alone

19   a sufficient basis to deny the motion for preliminary injunction.  *See Winter*, 129 S. Ct. at

20   374-75; *eBay*, 547 U.S. at 392-93.

21           Moreover, even if it were supported by admissible evidence, a threat of future

22   infringement is insufficient to establish irreparable harm.  *See Metro-Goldwyn-Mayer*

23   *Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007) ("mere

24           [1]  The only evidence Plaintiffs offer of irreparable harm relates to the purported
     need to bring subsequent lawsuits to recover for post-trial infringements.  Docket No. 4,
25   Ex. B ¶ 13; Ex. C ¶ 12.  The Supreme Court has made clear, however, that "litigation
     expense, even substantial and unrecoupable cost, does not constitute irreparable injury."
26   *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (quoting *Renegotiation Bd. v.*
     *Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)).

27           [2]  Pearson is taking steps to ensure that Plaintiffs' photographs are not included in
28   future editions.  *See* Orr Declaration ¶ 13.

                                                    7

likelihood of future infringement by a defendant does not by itself allow for an inference

of irreparable harm . . . future copyright infringement can always be redressed via

damages, whether actual or statutory.").  This is particularly true here because the

photographs in question comprise only a small portion of the allegedly infringing product

and any harm to Plaintiffs is purely economic.  *See Dun v. Lumbermen's Credit Ass'n*,

209 U.S. 20, 23-24 (1908) (money damages were adequate and a permanent injunction

was not warranted where a reference book contained a large amount of material that was

not copied); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1479 (9th Cir. 1988) (a monetary award

was adequate to compensate the owner of a copyrighted story included in an infringing

movie) (citation omitted), *aff'd sub nom. Stewart v. Abend*, 495 U.S. 207 (1990).

Similarly, in his concurring opinion in *eBay*, Justice Kennedy stated:

> When the [protected expression] is but a small component of
> the product the companies seek to produce and the threat of an
> injunction is employed simply for undue leverage in
> negotiations, legal damages may well be sufficient to
> compensate for the infringement and an injunction may not
> serve the public interest.

*eBay*, 547 U.S. at 396-97 (Kennedy, J., concurring); *see also* 4 Nimmer & Nimmer,

*Nimmer on Copyright* §14.06[B][1][c] (discussing *eBay*'s application in copyright cases).

The flurry of settlement-related communications Pearson received from Plaintiffs' counsel

after they filed their motion for preliminary injunction raises similar questions about their

motives in seeking a preliminary injunction in this case.

### 4. Plaintiffs' "forced licensing" theory does not support a finding of irreparable harm

Plaintiffs also contend they will suffer irreparable harm without injunctive relief

because Pearson's actions are tantamount to a "forced license."  Docket No. 4 at 6-8.  This

argument fails for several reasons.  First, Plaintiffs license their stock photographs on a

non-exclusive basis, meaning Pearson's use of the photographs does not deprive others of

them.  Plaintiffs accept, and indeed welcome, licenses (at least from textbook publishers)

8

1   provided the license fee is satisfactory.  Second, the fact that Plaintiffs authorize agencies

2   to license their photographs, in exchange for money, undermines the argument that

3   Plaintiffs are being forced to license them by Pearson – the authority to license is often in

4   the discretion of a third party.  Third, Pearson is unaware of a single instance in which

5   Bean, Kunkel or any agencies representing them have refused to license a photograph

6   prior to the filing of print overrun lawsuits like the instant action.  Orr Declaration ¶ 5.

7   This is hardly surprising given that "Plaintiffs are in the business of licensing

8   photographs."  Docket No. 4 at 8.  Plaintiffs cannot credibly claim they are being "forced"

9   to do something they have always agreed to do, nor can they rationally contend they will

10   suffer harm that cannot be remedied by money damages when the payment of money

11   appears to be the only factor considered when licensing their images.[3]

12              **5.      Plaintiffs' "criminal victim" theory is unfounded**

13       In a last-ditch effort to prove irreparable harm, Plaintiffs argue they are crime

14   victims.  *See* Docket No. 4 at 9.  But this is not a criminal copyright case.  The criminal

15   copyright statute makes the willful infringement of a copyright "for purposes of

16   commercial advantage or private financial gain" a crime.  17 U.S.C. § 506(a)(1)(A).  The

17   statute was designed, however, to "address the problem of bootlegging and piracy of

18   records, tapes, and films by imposing felony penalties on such activities."  *Dowling v.*

19   *United States*, 473 U.S. 207, 224 (1985); *see also, e.g., United States v. Hernandez*, 952

20   F.2d 1110, 1111 (9th Cir. 1991) (defendants were convicted for "running an audio cassette

21   counterfeiting ring").  The criminal copyright statute was intended to create felony

22   liability for a very limited set of infringements committed with the requisite willfulness.

23   H.R. Rep. No. 102-997, at 4 (1992).  Indeed, the "*mens rea* requirement serves to leave

24   _____

25   [3]  The cases Plaintiffs rely upon in support of this "forced licensing" theory are
     easily distinguished.  For example, in *Designer Skin, LLC, v. S&L Vitamins, Inc.*, No. CV
     05-3699, 2008 WL 4174882 (D. Ariz. Sept. 5, 2008), the court issued a permanent

26   injunction only after a full bench trial resulting in a finding that there was no ascertainable
     market for licensing fees.  *Id.* at *5.  In *Microsoft Corp. v. Marturano*, No. 1:06-cv-1747,

27   2009 WL 1530040, at *8 (E.D. Cal. May 27, 2009), a permanent injunction was issued to
     enjoin the illegal distribution of counterfeit software after the court found defendant in

28   default for failing to participate in the litigation.

1    outside the reach of the criminal law losing parties in ordinary business disputes such as
2    those involving . . . contract disputes over the scope of licenses." *Id.*

3        Here, the parties have a business dispute over the scope of certain licenses.
4    Plaintiffs have not established copyright infringement, let alone willful infringement.
5    Indeed, in the only specific example of alleged infringement identified by Plaintiffs – the
6    use of their photographs in a *Science Explorer* textbook distributed in China – Plaintiffs
7    concede that Pearson brought that use to Bean's attention, stating that "permission was
8    inadvertently not requested" for the publication in question and that Pearson was seeking
9    to obtain permission.  Docket No. 4 at 2-3.[4]  That allegation does not even support a claim
10   of willful infringement.  Moreover, research has revealed no decision holding that a
11   private litigant's unsubstantiated claim that a felony has been committed – where no such
12   charges have been filed by the government – is sufficient to establish the irreparable harm
13   necessary to obtain injunctive relief in a civil case.  Plaintiffs are not crime victims, and
14   the criminal copyright statute does not apply to this civil action.

15            **C.      Plaintiffs Have Not Established a Likelihood of Success on the Merits**

16       A preliminary injunction will not be granted "'unless the movant, *by a clear*
17   *showing*, carries the burden of persuasion' of showing a likelihood of success on the
18   merits."  *Blake v. Irwin Mortg.*, No. CV-10-2435-PHX-GMS, 2011 WL 98538, at *5 (D.
19   Ariz. Jan. 12, 2011) (quoting *Mazurek*, 520 U.S. at 972); *Przybylski v. Stumpf*, No. CV-
20   10-8073-PCT-GMS, 2010 WL 2025393, at *1 (D. Ariz. May 19, 2010).  Moreover, the
21   Ninth Circuit has held, "[l]ikelihood of success on the merits must be based on admissible
22   evidence in the record, rather than surmise or speculation concerning what evidence could
23   be produced at trial . . . [a]rguments are not evidence."  *Klein v. City of Laguna Beach*,
24   381 Fed. App'x. 723, 726 (9th Cir. 2010).  This district has routinely denied motions for
25   injunctive relief where plaintiffs tried to meet their burden with conclusory statements

26   _____
27       [4]  Kunkel concedes that Pearson was granted a license to use his photograph in the
     *Science Explorer* textbook in North America.  Docket No. 4, Ex. C ¶ 11.  In fact, Bean
28   also granted Pearson permission to include his image in the same publication in North
     America.  Orr Declaration ¶ 12.

1   rather than evidentiary support. *See, e.g.*, *Lavenue v. Edmunds*, No. CV 10-1479-PHX-
2   DGC, 2010 WL 2838383, at *2 (D. Ariz. July 20, 2010); *Blake*, 2010 WL 2025393, at *1.
3          In this case, Plaintiffs do not even attempt to demonstrate a likelihood of success
4   on the merits.  The allegation that Pearson printed textbooks in excess of the quantities
5   stated in licenses is based solely on allegations made by ***other plaintiffs in other cases***.
6   *See* Docket No. 4 at 4-5 & Exs E, F & G.  Plaintiffs do not offer any evidence of a
7   likelihood of success on the merits ***in this case***.[5]  Indeed, Plaintiffs concede they do not
8   have such evidence, arguing that "[d]iscovery will show Pearson also printed Plaintiffs'
9   Images beyond the limits in the licenses-in-suit, and Plaintiffs request expedited discovery
10  on this issue."  Docket No. 4 at 4.  Plaintiffs did not, however, file a motion for expedited
11  discovery, and courts in this District do not grant expedited discovery as a matter of right.
12  *See Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz.
13  2001) (imposing a "good cause standard to warrant the granting of any expedited
14  discovery").  Moreover, at the time of this filing, Plaintiffs have not served discovery[6]
15  despite the fact that the Court's March 1, 2011 Scheduling Order states:

16          THE LIMITATION ON THE COMMENCEMENT OF
17          FORMAL DISCOVERY SET FORTH IN FED. R. CIV. P.
            26(d) IS WAIVED – FORMAL DISCOVERY NOT ONLY
18          MAY COMMENCE AT ANY TIME AFTER SERVICE OF
            PROCESS, BUT THE COURT EXPECTS DISCOVERY TO
19          COMMENCE PRIOR TO THE SCHEDULING
20          CONFERENCE.

21  Docket No. 9 at 2.  Expedited discovery would not be appropriate in any event because
22

23          [5]  Kunkel in particular cannot establish a likelihood of success on the merits
24  because he released all claims concerning photographs licensed to Pearson during the
    prior six years.  While Kunkel did not release claims he may have for photographs
25  licensed earlier than May 13, 2005, the statute of limitations for copyright infringement is
    three years.  17 U.S.C. § 507.  It is therefore ***highly unlikely*** that Kunkel will prevail on
26  his claims relating to photographs licensed more than six years ago.

27          [6]  On March 14, 2011, Plaintiffs' counsel stated they were finalizing discovery and
    asked if undersigned counsel would accept service of same – a curious question given that
28  a week earlier undersigned counsel informed Plaintiff's counsel of our representation of
    Pearson and that all communications should be directed to our attention.

1   Plaintiffs cannot satisfy the other factors necessary to obtain injunctive relief.

2   **D.    The Balance of Equities Militates Against the Award of a Preliminary Injunction**

3

4   Even if Plaintiffs could somehow demonstrate irreparable harm, their motion for

5   injunctive relief fails because the balance of equities strongly favors Pearson.  To obtain a

6   preliminary injunction, a plaintiff must show that "the balance of equities tips in his

7   favor" as against the defendant.  *Gowan*, 2009 WL 2028387, at *6; *see also Winter*, 129

8   S. Ct. at 374, 376 ("courts must balance the competing claims of injury and must consider

9   the effect on each party of the granting or withholding of the requested relief") (citation

10  and quoting reference omitted); *accord Los Angeles Mem. Coliseum Comm'n v. Nat'l*

11  *Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

12  Here, the equities overwhelmingly favor the denial of Plaintiffs' motion.  As set

13  forth above, Plaintiffs' own records demonstrate that their claimed injuries would be

14  compensable with money damages in accordance with the invoices, which set license fees

15  for photographs depending on several factors, including the expected number of published

16  copies.  In contrast, the entry of a preliminary injunction – without any showing that

17  Pearson exceeded the print quantity stated on any of Plaintiffs' invoices – would force

18  Pearson to, among other things, destroy or otherwise alter existing inventory and halt the

19  distribution of educational textbooks and other materials to schools.  Any such effort to

20  enjoin the distribution of publications that have not yet reached schools would involve

21  significant burden and expense.  *See* Declaration of M. Vicky Hurwitz (attached hereto as

22  Exhibit C, the "Hurwitz Declaration") ¶¶ 10-13.  In addition, the injunction would impair

23  Pearson's ability to fulfill its contractual obligations and the expectations of schools with

24  respect to the supply of textbooks.  *See id.* ¶ 12.

25  States, school districts, or other educational authorities require that instructional

26  materials satisfy specific academic standards and reflect other state- or district-specific

27  criteria.  *Id.* ¶ 3.  Many states use a highly regulated "adoption" process to identify

28  approved publishers for instructional materials.  *Id.* ¶ 4; *see, e.g.*, Cal. Educ. Code §

12

60000.  These states frequently require educational publishers to submit bids to furnish textbooks twelve to eighteen months in advance of the purchase date, and publishers generally begin compiling and editing textbooks twelve to eighteen months in advance of the bidding process. Hurwitz Declaration ¶ 4.  Often, schools in "adoption" states are restricted to purchasing textbooks from the limited list of approved publishers.  *Id.* ¶ 4.  Similarly, states that do not use the "adoption" process often select textbooks from particular publishers for a term of several years and require the publisher to provide assurances of its ability to satisfy their need for textbooks for the duration of the contract.  *Id.* ¶ 5; *see also, e.g.*, State of Tennessee, Department of Education, Preliminary Notice of Invitation to Bid (attached hereto as Exhibit D).  Pearson's contracts with states and school authorities often require approval by the state or school district before certain changes can be made to adopted instructional materials.  Such contracts may limit Pearson's ability to replace photographs in textbooks that have already been adopted by or are in use in schools.  *See* Hurwitz Declaration ¶ 6.

Pearson's contracts with educational authorities often require it to maintain certain inventory levels and ensure timely delivery of publications throughout the entire contract period.  *See id.* ¶ 8.  The contracts impose penalties for any failure to satisfy these requirements, ranging from monetary penalties to forfeiture of existing contracts and prospective rights to conduct business with particular educational authorities.  *See id.* ¶ 9; *see also, e.g.*, New York City Department of Education, Bid Invitation Quotation (attached hereto as Exhibit E) ("Upon a finding of default by the Board of Education, the Contractor may be barred from doing business with the Department of Education for a period of up to four (4) years and listed in the New York City Comptroller's VENDEX system of default contractors.").

If, as requested in Plaintiffs' motion for preliminary injunction, Pearson were required to retrieve and print replacements of all publications containing Plaintiffs' photographs in its production and distribution pipeline, it would incur substantial expense. This expense could include, among other things, the cost of identifying and retrieving all

textbooks containing purportedly unlicensed photographs, redesigning the textbook layout, modifying any editorial content relating to the contested images, possibly securing approval of these changes from educational authorities, and reprinting and redistributing the replacement textbooks on an expedited basis.[7]  Declaration of William Hess (attached hereto as Exhibit F, the "Hess Declaration") ¶ 4.  In addition to Pearson's losses associated with the retrieval and replacement of textbooks, an award of injunctive relief could result in penalties to Pearson for failure to satisfy duties owed to educational authorities, including the loss of prospective contracts unrelated to the publications even at issue in this action.  Put simply, the proposed preliminary injunction threatens Pearson's goodwill with educational authorities and jeopardizes its ability to continue conducting business with states and school districts and would jeopardize millions of dollars of revenue attributable to content other than Plaintiffs' photographs, causing substantial irreparable harm to Pearson.  *See* Hurwitz Declaration ¶ 11.

Faced with similar facts, courts have denied requests for injunctive relief.  *See Gowan*, 2009 WL 2028387, at *7 (finding that plaintiff failed to show that balance of equities favored it where injunction "could harm [defendant's] relationships with its distributors, might affect its ability to re-emerge into the marketplace next year, and might jeopardize future . . . product roll-outs"); *Trust Co. Bank v. Putnam Publ'g Grp., Inc.*, No. CV 87 07393, 1988 WL 62755, at *3, 7 (C.D. Cal. Jan. 4, 1988) (denying motion for preliminary injunction, and recognizing potential hardship on defendants, including loss of goodwill, negative effect on future book sales, and disruption to publication schedule, were preliminary injunction to issue); *Belushi v. Woodward*, 598 F. Supp. 36, 37 (D.D.C. 1984) (denying injunctive relief where publisher would be unduly harmed by disruption of "carefully orchestrated and costly plans for selling and marketing the books" and the likelihood of substantial lost sales); *Andersson v. Sony Corp. of Am.*, No. 96 Civ. 7975 (RO), 1997 WL 226310, at *3 (S.D.N.Y. May 2, 1997) (denying preliminary injunction

---

[7]  Indeed, limitations on printer capacity alone could be an impediment to printing replacement textbooks on an expedited basis.  Even if adequate capacity were available, replacing textbooks would be expensive.  *See* Hess Declaration ¶ 5.

because "the balance of hardships tips decidedly in defendants' favor" given the substantial cost and time associated with removing photographs from magazines). In view of the harm that would result to Pearson if a preliminary injunction were granted, Plaintiffs cannot demonstrate that the balance of equities tips in their favor.[8] Rather, it is clear that the balance tips decidedly in Pearson's favor.

**E.      Public Policy Weighs in Favor of Ensuring Students Have Adequate And Ongoing Access to Textbooks While Protecting Copyright Holders' Rights with Adequate Legal Remedies**

The public interest also undermines Plaintiffs' claim for injunctive relief. Although courts have recognized a public interest in protecting copyright holders' rights, the public interest in education clearly trumps that interest where, as here, the proposed injunction threatens to interrupt schools' access to books, and the copyrights at issue can be protected through traditional legal remedies. *Cf. Abend*, 863 F.2d at 1479 ("This is not the first time we have recognized that an injunction may be an inappropriate remedy for copyright infringement.").

Courts have recognized the "strong public interest favoring the publication of books." *Trust Co. Bank*, 1988 WL 62755, at *4, 7 ("The public interest supports the publication of books."); *see also Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 311 (2d Cir. 1966) (reversing grant of motion for preliminary injunction, and acknowledging "[c]ompelling reasons for not granting a preliminary injunction" where "'dealing with a book and not an ordinary subject of commerce'" (quoting *Pocket Books, Inc. v. Dell Publ'g*, 267 N.Y.S.2d 267, 273 (1966))); *Belushi*, 598 F. Supp. at 37-38 ("The normal reluctance to impose a summary restraint in advance of a full and complete trial is

---

[8] These substantial harms make clear that Plaintiffs must not be excused from posting an appropriate bond. Fed. R. Civ. P. 65(c) directs movants to provide security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Although Plaintiffs contend that the requested preliminary injunction "will cost [Pearson] nothing," Docket No. 4 at 12, the Declarations submitted herewith demonstrate that Pearson would bear significant costs if the requested injunctive relief were granted. Accordingly, Plaintiffs should be required to provide security to compensate Pearson for the substantial costs and damages that would result from an improper injunction.

15

1   particularly acute in a case such as this which deals with the publication of a book."

2   (quoting *Rosemont Enters.*, 366 F.2d at 311)).  This is particularly true in cases like this

3   where virtually all of the book's content is not at issue.

4         Educational authorities' curriculum-setting processes and their purchasing

5   contracts with textbook publishers reflect the need for timely and uninterrupted access to

6   quality textbooks.  As described above, educational authorities require that adopted

7   textbooks satisfy curricular needs and may prohibit the smallest deviations from the

8   approved versions of textbooks.  Further, when states and school districts adopt particular

9   publications, they do so for a term of several years and require the publisher to provide

10  assurances of its ability to satisfy their need for textbooks on an ongoing basis.  *See*

11  Exhibit D.  Thus, states, school districts, and other educational authorities clearly value

12  the timely and uninterrupted supply of textbooks as critical to their educational missions.

13  Indeed, various state statutes codify the importance of textbooks in education.  *See, e.g.*,

14  Ala. Code 1975 § 16-36-70 ("The Legislature finds that textbooks and other instructional

15  materials are among the basic tools of learning that must exist if Alabama students are to

16  succeed.  All students in the public schools shall be provided with adequate and current

17  textbooks . . . ."); Cal. Educ. Code § 60119(a)(1)(A) ("The governing board . . . shall

18  make a determination, through a resolution, as to whether each pupil in each school has

19  sufficient textbooks or instructional materials . . . ."); *see also id.* § 60119(c)(2)

20  ("Sufficient textbooks or instructional materials . . . does not include photocopied sheets

21  from only a portion of a textbook or instructional materials copied to address a

22  shortage.").

23        There is a compelling public interest in the timely and uninterrupted supply of

24  textbooks to schools and students.  Plaintiffs seek a preliminary injunction forcing

25  Pearson to repossess textbooks in the production pipeline that have not yet reached

26  schools; this requested relief threatens to interrupt schools' access to books and

27  necessarily would cause Pearson great expense and prevent it from fulfilling its

28  obligations to maintain contractually required or expected inventory levels and ensure

16

timely deliveries of textbooks to schools.  The relief sought goes far beyond what is necessary to compensate Plaintiffs for the alleged unauthorized publication of stock photos licensed for as little as $40 each.  Plaintiffs' requested relief should be denied, because the public interest in ensuring schools' and students' uninterrupted access to textbooks trumps the interest in protecting copyright holders who can be adequately compensated for any harm through damages.

**IV.     CONCLUSION**

Plaintiffs have failed to carry the heavy burden required to obtain the extraordinary remedy of a preliminary injunction.  Therefore, an evidentiary hearing on Plaintiffs' motion is not necessary.  *See Slide-Lok*, 2008 WL 4649035, at *3 (holding that court is not obligated to hold an evidentiary hearing on a motion for preliminary injunction).  For the reasons set forth above, Pearson respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

Dated:  March 15, 2011

By:  s/ Philip R. Higdon
Philip R. Higdon
Perkins Coie LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788

David W. Marston Jr. (admitted pro hac vice)
Dana E. Becker (to be admitted)
Ramin Afshar-Mohajer (to be admitted)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

*Attorneys for Defendant Pearson Education, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

☒    I hereby certify that on March 15, 2011, true and correct copies of the foregoing memorandum and the accompanying exhibits were served via first class mail and the ECF filing system upon:

Christopher Seidman
Harmon & Seidman LLC
101 S. 3rd Street, Suite 265
Grand Junction, CO 81501
chris@harmonseidman.com

Maurice Harmon
Harmon & Seidman LLC
The Pennsville School
533 Walnut Drive
Northampton, PA 18067
maurice@harmonseidman.com

*Attorneys for Plaintiffs Tom Bean*
*and Dennis Kunkel Microscopy, Inc.*

<u>s/ Philip Higdon</u>
Philip R. Higdon