**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tom Bean, et al., | CV 11-8030-PCT-PGR |
| Plaintiffs, | |
| v. | **ORDER** |
| Pearson Education, Inc., | |
| Defendant. | |

Before the Court are Plaintiffs' Motion for Partial Summary Judgment (Doc. 165) and Defendant's Cross-Motion for Summary Judgment (Doc. 170). The motions are fully briefed. For the reasons set herein, the Court will grant Plaintiffs' motion and deny Defendant's cross-motion.

## DISCUSSION

Plaintiffs Tom Bean and Dennis Kunkel are professional photographers. Defendant Pearson is a publisher of educational materials, including textbooks. Between 1992 and 2007, Plaintiffs sold limited, non-exclusive licenses authorizing Pearson to print Plaintiffs' photographs.[1] Plaintiffs allege that Pearson committed copyright infringement and fraud by printing the photographs in excess of the license terms. (Doc. 126.)

---

[1] The license limits, set forth in billing requests and invoices, include, for example, terms such as: "One time, non-exclusive, North American English language rights to use two of [Plaintiff Bean's photos] in EARTH SCIENCE . . . with a print run of less than 40,000 copies." (Doc. 165-4, Ex. 2.)

Plaintiffs move for summary judgment "as to Pearson's liability for copyright infringement through overprinting, unlicensed geographic distribution, and reproduction in unlicensed media formats of the photographs identified in Exhibits A and B to this motion." (Doc. 165 at 3.) Exhibit A documents 378 uses of photographs by Pearson for which Plaintiff Bean owns copyrights. (Doc. 167, Ex. A.) Exhibit B consists of 40 uses of photographs as to which Plaintiff Kunkel owns copyrights. (*Id.*, Ex. B.)

Pearson opposes Plaintiffs' motion for partial summary judgment and moves for summary judgment with respect to Plaintiffs' fraud claims. (Doc. 170.)

**Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial responsibility for informing the district court of the basis for its motion and identifying the portions of the pleadings, depositions, interrogatory answers, admissions, and affidavits that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 250. The opposing party need not show the issue will be resolved conclusively in its favor. *See Liberty Lobby*, 477 U.S. at 248–49. All that is necessary is the submission of sufficient evidence to create a material factual dispute, requiring a jury or judge to resolve the parties' differing versions of the truth at trial. *Id.*; *see First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). "[A]ll justifiable inferences must be drawn in [the nonmovant's] favor."

- 2 -

*United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Liberty Lobby*, 477 U.S. at 255).

**Plaintiffs' Motion for Partial Summary Judgment**

To prevail on a copyright infringement claim, Plaintiff must establish "(1) ownership of a valid copyright and (2) copying by the defendant of protect[i]ble elements of the work." *Bean v. John Wiley & Sons, Inc.*, No. CV-11-8028-PCT-FJM, 2012 WL 1078662, at *2 (D.Ariz. March 30, 2012) (quoting *CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999)). A licensee can infringe a copyright by exceeding the scope of a license. *Id.* (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir.1989)).

It is undisputed that Plaintiffs own valid copyrights for the photographs that are the subject of their motion. Pearson does not dispute the accuracy of the information set forth in Exhibits A and B, which details print runs and geographic distribution outside the scope of the applicable licenses. Instead, Pearson argues summary judgment is inappropriate because genuine issues of material fact exist and because additional discovery is required under Rule 56(d).[2]

Pearson contends that summary judgment is precluded because a factual dispute exists as to whether Pearson had an implied license to use the photographs in excess of the limitations in the licenses. "A copyright owner may grant a nonexclusive license expressly or impliedly through conduct." *Field v. Google, Inc.*, 412 F. Supp.2d 1106, 1115 (D.Nev. 2006) (citing *Effects Associates, Inc. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 1990)). "[A]n implied license is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his

---

[2] Pearson also argued that Plaintiffs' copyright infringement claims are precluded because any violation of the license terms gives rise only to breach of contract claims. (Doc. 171 at 5–8.) However, acknowledging that a district court recently rejected the identical argument, *Pacific Stock, Inc. v. Pearson Educ., Inc.*, --- F.Supp.2d ----, 2013 WL 704930 (D.Hawai'i 2013), Pearson has withdrawn that argument. (Doc. 189 at 2, n.2.)

- 3 -

work." *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) (citations omitted); *see Field*, 412 F.Supp.2d at 1116 (stating that implied license may be found "where the copyright holder engages in conduct from which [the] other [party] may properly infer that the owner consents to his use").

Pearson asserts that the parties' course of conduct since 1986 "evidences the existence of an implied license to reproduce and distribute Plaintiffs' photographs." (Doc. 171 at 11.) According to Pearson, "there is substantial evidence that Plaintiffs granted Pearson a nonexclusive implied license to use their stock photographs in excess of the distribution parameters in the parties' original licenses for an additional fee." (*Id.* at 9–10.) Pearson notes, for example, Plaintiff Kunkel's deposition testimony that during his 15-year business relationship with Pearson, he never denied a request by Pearson for a license. (*See* Doc. 174, ¶ 27; Doc. 173, Ex. E at 19:21–24.) Similarly, Plaintiff Bean testified that he could recall only one instance in the 27 years he did business with Pearson in which he denied a license request from Pearson. (*Id.*, Ex. ¶ 28; Ex. G at 11:21–25.) Plaintiffs also routinely granted extension requests from Pearson when a publication had a greater-than-anticipated demand. (*Id.*, ¶¶ 23–24, 27; Ex. E, at 50:11–17.) Finally, Pearson notes that Plaintiffs never objected to Pearson's inclusion of their photographs in its digital archive. (*Id.*, ¶ 26; *see* Ex. E, at 51:4–7, 15:24–18:13; Ex. G at 113:19–114:15).

Pearson cites *Falcon Enters., Inc. v. Publishers Serv., Inc.*, 438 Fed.Appx. 579 (9th Cir. 2011), in support of its argument that the regular provision of content to a publisher over time will support an implied license to a particular image. In *Falcon*, the plaintiff owned photographs which it sent to the defendant Publishers, who regularly published the images. *Id.* at 581. When it learned that Publishers had used some of its images without securing permission, Falcon sued for breach of contract and copyright infringement. After a bench trial, the court entered judgment against Falcon with regard to the copyright infringement claims, finding that Publishers had an implied license to publish the photos. The Ninth Circuit affirmed, holding that the "parties' conduct demonstrates that Falcon granted

- 4 -

Publishers an ongoing nonexclusive implied license to use its content for a fee." *Id.* The court explained:

> Falcon's claim that Publishers needed an express license for each image that Publishers published is contradicted by the frequent and informal interactions between the parties. Most images that Falcon submitted to Publishers, including the sets that Falcon based its copyright infringement lawsuit on, were previously published "second rights" images worth little and offered to Publishers without any restrictions or promises of exclusivity. Falcon never declined to give Publishers a nonexclusive license to publish its images, which supports Publishers' contention that over time Falcon had granted it an implied license. As Publishers owed Falcon payment only after it published Falcon's copyrighted images, its obligation to pay constituted a covenant, rather than a condition precedent that would give rise to a copyright infringement lawsuit.

*Id.*

In contrast to the informal course of conduct described in *Falcon*, which was initiated when Falcon sent its photos to Publishers, here the parties engaged in a structured process, with Pearson submitting written requests to Plaintiffs and Plaintiffs issuing limited license agreements. Unlike the course of conduct between the parties in *Falcon*, the relationship between Plaintiffs and Pearson was not characterized by frequent, informal interactions.

In *Psihoyos v. Pearson Educ., Inc.*, 855 F.Supp.2d 103, 124 (S.D.N.Y. 2012), also cited by Pearson, the court explained that "the question comes down to whether there was a 'meeting of the minds' between the parties to permit the particular usage at issue." Accordingly, the evidence must show that "*both parties* to the transaction, not just the defendant, intended that the defendant could use or copy the plaintiff's work without liability for copyright infringement." *Id.* (quoting *Design Options, Inc. v. BellePointe, Inc.*, 940 F.Supp. 86, 92 (S.D.N.Y. 1996); *see Viacom Intern. Inc. v. Fanzine Intern. Inc.*, No. 98 Civ. 7448, 2000 WL 1854903, at *3 (S.D.N.Y. July 12, 2000) ("As with all copyright licenses, an implied license protects the licensee only to the extent the copyright owners intended that their copyrighted works be used in the manner in which they were eventually used.")

The record indicates that there was no "meeting of the minds" with respect to Pearson exceeding the scope of the licenses. William Hess, Senior Vice President & CFO of Pearson School Group, was asked during his March 29, 2012, deposition testimony whether Pearson

had "any evidence that Bean or Kunkel were aware that Pearson considered it had an implied license to continue to print their images after the written license terms had been used up?" He answered, "Not that I am aware of." (Doc. 183-1 at 154:8–17.) When asked whether Pearson had "an obligation to contact plaintiffs before Pearson's use exceeded the permitted uses under the license," Hess responded, "When Pearson became aware of the situation my answer would be, yes." (Doc. 167-9 at 50:11–18.) When asked again, "Now, in this situation we are discussing where after issuance of a license with a print run limit Pearson continues to print after the print limit is reached and doesn't notify the plaintiffs that that has occurred is that an acceptable practice?" Hess replied, "No. As I said earlier if we are aware of it we will take steps to notify." (Doc. 183-1 at 155:7–16.)

From this testimony it is evident that neither party believed that Pearson had an implied license to exceed the scope of the license terms. Plaintiffs did not deliver their photos to Pearson with the intent that Pearson would print them in excess of the limits that had been agreed to in the licenses.

On this record, the fact that Plaintiffs would issue additional licenses at Pearson's request does not mean that Pearson was free to use the images before obtaining such permission.

The facts of this case are indistinguishable from those in other cases granting summary judgment on similar copyright infringement claims. In *Bean v. John Wiley & Sons, Inc.*, No. CV-11-8028-PCT-FJM, 2012 WL 1078662, at *2 (D.Ariz. March 30, 2012), Bean alleged copyright infringement against another textbook publisher for using his photographs beyond the license limits. The court granted Bean's motion for partial summary judgment, concluding, "It is undisputed that defendant infringed plaintiff's copyrights on each occasion as listed in Exhibits A and B to plaintiff's motion for partial summary judgment. . . . Accordingly, plaintiff is entitled to summary judgment on the issue of liability for each of the 108 instances of copyright infringement listed in Exhibits A and B." *Id.*

In *Wood v. Houghton Mifflin Harcourt Publishing Company*, 589 F.Supp.2d 1230 (D.Colo. 2008), the court granted partial summary judgment in favor of the photographer against the publisher. The licenses at issue specified print runs of "40,000" or "under 40,000." *Id.* at 1236–37. The court concluded that there were no material factual disputes about the plain meaning of the term "40,000," notwithstanding deposition testimony from the publisher about the purported industry understanding, according to which a copyright license that specifies a print run of 40,000 copies "does not limit publishers, which could reproduce over a million copies of the copyrighted work without seeking further permission from, or paying additional fees to, the copyright holder." *Id.* at 1241. The court explained:

> HMH may not defeat summary judgment with such facially implausible and self-serving claims. In short, without substantially more evidence than that of [HMH's witness's] testimony, this Court finds that no reasonable jury could, or would, find that a license limited by clear language to a run of 'under 40,000' included permission to reproduce more than 40,000 copies—indeed, to reproduce any number of copies that the publisher or printer desired.

*Id.*

Pearson also argues, in response to Plaintiffs' contention that it "sold Plaintiffs' Photographs beyond licensed geographic distribution areas" (Doc. 165 at 7), that a genuine issue of material fact exists as to the meaning of the terms "United States" and "North America" in the parties' licenses (Doc. 171 at 11–12).

According to Pearson, Plaintiffs have acknowledged that "industry definitions of the geographic terms in licenses have changed over time"; specifically, that "geographic limitations included in certain of its billing requests—such as 'United States' and 'North America'—include territories and military bases abroad and have evolved over time to include an allowance for distribution outside of the stated territory." (Doc. 171 at 11.) In support of this argument, Pearson indicates that it has distributed certain of the publications to U.S. territories, military bases, and Department of Defense schools abroad. (*Id.*) Pearson also states that "Plaintiffs have failed to show that the parties agreed on, and Pearson breached, those [geographical] limits." (*Id.* at 12.)

- 7 -

Plaintiffs counter that "Pearson has produced no evidence that 'North American' distribution automatically permitted sales outside of North America." (Doc. 183 at 6.) They cite Dennis Kunkel's deposition testimony that "North American in my examples or reference was always the U.S. and Canada." (Doc. 182-2 at 88:9–18.) Kunkel testified that in 1998 when he asked for clarification on the issue Pearson defined "North America" as the United States and Canada. (*Id.* at 91:17–92:24). He also testified that when Pearson began asking to include U.S. territories in its licenses, in late 1999 or 2000, such expanded distribution "had to be specified in their permissions." (*Id.* at 94:9.) Plaintiffs' exhibits include request letters and licenses that specify the distribution region as "US Extended" rather than "North America." (Doc. 172, Ex. A at 29, Ex. C at 12, Ex. D at 47.) Plaintiff Bean likewise testified that he understood "North America" to mean the continent of North America. (Doc. 173, Ex. G at 199:24.)

Based on this record, the Court concludes that no genuine issue of fact exists with respect to the meaning of North America—i.e., the United States and Canada—as used in the licences. Where distribution in U.S. territories abroad was contemplated, the extended distribution was noted in the licenses. Furthermore, as Plaintiffs note, Pearson offers no evidence disputing the allegation that it exceed license distribution terms, so there is no genuine issue of fact as to Pearson's geographic distribution infringements.

In sum, Pearson has not provided any specific facts showing that there is a genuine issue for trial with respect to the photos in Exhibits A and B.

Finally, Pearson contends that Plaintiffs' summary judgment motion should be denied under Rule 56(d) because further discovery is required concerning whether Plaintiffs' claims are barred by the statute of limitations and whether Plaintiffs have adduced competent evidence in support of their claim for damages. (Doc. 171 at 12.)

Rule 56(d) permits a party to resist a summary judgment motion by "show[ing] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify

- 8 -

its opposition" to the motion. Fed. R. Civ. P. 56(d). A party may invoke Rule 56(d) to ask the court to deny the summary judgment motion outright, or delay consideration while the party completes necessary discovery.

A party relying on Rule 56(d) must offer specific reasons that it needs additional discovery to oppose a summary judgment motion. The affidavit must state "the specific facts it hopes to elicit from further discovery," and that "the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *see State of Cal., on Behalf of California Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) (for a continuance under Rule 56(f), predecessor to 56(d), parties must show "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion"). Moreover, the Rule only applies "where the non-moving party has not had the opportunity to discover information that is essential to its opposition." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)). A court has discretion to deny a Rule 56(d) request that does not meet these requirements. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100–01 (9th Cir. 2006).

The Copyright Act provides that, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Under the so-called "discovery" rule, a claim for copyright infringement "accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994).

In support of their request under Rule 56(d), Pearson cites Plaintiffs' deposition testimony that they learned of the factual basis for their claims from their attorneys. According to Pearson, because Plaintiffs refused to disclose such facts on the grounds of

attorney-client privilege, it is "impossible to know whether Plaintiffs could or should have known of the claims before the applicable three-year statute of limitations." (Doc. 171 at 12.)

Plaintiffs filed this lawsuit on February 25, 2011. Plaintiffs argue that Pearson "has not cited any facts showing that Plaintiffs should be charged with knowledge of the facts constituting infringement prior to February 25, 2008." (Doc. 183 at 9.) The Court agrees. In his deposition testimony, Plaintiff Kunkel stated that in November 2008 he first became aware as a "general matter" that some publishers were engaging in overprinting. (Doc. 173-1, Ex. E at 45:4–20.) Subsequently, he received information from his attorney that Pearson had been exceeding license limits. (*Id.* at 46:13–19.) Plaintiff Bean testified that he became "curious" about Pearson's practices "sometime in 2009." (*Id.*, Ex. G at 41:5–11.)

The Court finds that Pearson has failed to meet its burden under Rule 56(d). It has not presented, through an affidavit or declaration, specific information concerning what material it hopes to uncover and how the additional discovery would contradict Plaintiffs' deposition testimony about when they learned of Pearson's infringing activities or shed any additional light on the issue of when the limitations period began to run. Likewise Pearson has failed to show that it has not had the opportunity to discover information that is essential to statute of limitations defense.[3] Pearson's Rule 56(d) request gives the Court no reason to think its disposition of Plaintiffs' summary judgment motion would be any different if the court allowed it to conduct additional discovery. *See Riverside Pub. Co. v. Mercer Pub. LLC*, No. C11-1249RAJ, 2013 WL 1346589, at \*9 (W.D.Wash. April 3, 2013).

Pearson also argues that summary judgment should be denied under Rule 56(d) because Plaintiffs did not provide damages calculations in their initial disclosures. (Doc. 171 at 12.) Plaintiffs respond that damages calculations are irrelevant to their motion because they seek partial summary judgment on the issue of liability alone. (Doc. 183 at 10.) The

---

[3] The Court allowed Pearson to reopen the deposition testimony of Plaintiffs Bean and Kunkel. (Doc. 163.)

Court agrees. A district court may deny a Rule 56(d) motion where the request is not relevant to the issues presented on the motion for summary judgment. *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 465 (9th Cir. 1990); *see Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981) ("In cases that involve . . . multiple causes of action, summary judgment may be proper as to some causes of action but not as to others, or as to some issues but not as to others, or as to some parties, but not as to others.").

Here, the issue is Pearson's liability for infringement with respect to certain images. Rule 56(d) does not require a stay of Plaintiffs' motion for partial summary in order for Pearson to conduct discovery on damages.

**<u>Pearson's Cross-motion for Summary Judgment</u>**

Pearson moves for summary judgment on Plaintiffs' fraud claims. (Doc. 170) To prevail on a fraud claim under Arizona law, a claimant must show (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) his consequent and proximate injury. *See Van Weelden v. Hillcrest Bank*, No. 2:10-CV-1833-PHX-JAT, 2011 WL 772522, at *7 (D.Ariz. February 28, 2011) (citing *Echols v. Beauty Built Homes*, 132 Ariz. 498, 647 P.2d 629, 631 (1982)).

Plaintiffs allege fraud with respect to Pearson's use of the photographs set forth in Exhibits C, D, E, F, and G, of the Third Amended Complaint (Doc. 126). In support of these claims, Plaintiffs allege that Pearson "intentionally requested inadequate licenses to reproduce and distribute Plaintiffs' photographs." (Doc. 186 at 1.) The evidence Plaintiffs rely on consists of the Pearson's "internal pre-publication forecasts and the much higher and broader circulation of prior textbook editions." (*Id.*) According to Plaintiffs, "Pearson's requests misled Plaintiffs into charging lower license fees than Plaintiffs would otherwise have required." (*Id.*)

Pearson argues that summary judgment is appropriate because Plaintiffs have not

produced any evidence of fraudulent intent or shown any fraud-related injury.[4] (Doc. 170 at 14–17.) According to Pearson, "Plaintiffs cannot plausibly dispute that Pearson's billing requests reflected its good faith estimates of its projected future distribution for the publications in which it sought to include Plaintiffs' photographs." (*Id.* at 14.)

The court in *Wood*, addressing the same scenario, denied the publisher's motion for summary judgment. 589 F.Supp.2d at 1251. The court explained that:

> a reasonable jury certainly could find that HMH's requests for permission to print 40,000 copies of Wood's photos, with North American licensing rights, constituted a promise concerning a future act. Furthermore, that jury could also find that, where HMH knew when making the request that it would exceed both the numerical and geographical limitations stipulated in its letters, its promise was "coupled with a present intention not to fulfill the promise." Therefore, there exists a genuine issue of material fact as to whether Wood may succeed in his fraud claim at trial.

*Id.* (citations omitted). The court further ruled that "a reasonable jury could find that Wood relied on a promise by HMH to print no more than 40,000 copies." *Id.*

The same analysis applies here. A reasonable jury could find that Pearson, when it agreed to the numerical and geographical limits set forth in the invoices and request letters, knew that it would exceed those limits. The record offers factual support for this finding. In a number of instances documented by Plaintiffs, Pearson's forecast print runs greatly exceeded the permissions granted by Plaintiffs and agreed to by Pearson. (*See* Doc. 186 at 8–10.)

In August 2005 Pearson requested permission from Bean to include two of his photographs in *Scott Foresman Science*, Grade 3, and Bean granted permission to reproduce up to 200,000 copies of the text. (Doc. 126-3, Ex. C-1.) By April 2009, Pearson had already reproduced 354,847 copies. (*Id.*, Ex's C-2, C-3.) In November 2009, Pearson sought permission to print an additional 100,000 copies of Bean's photographs in that textbook in

---

[4] Pearson also argued that Plaintiffs' fraud claims are barred by the economic loss rule because the claims sound in contract, not copyright infringement. (Doc. 171 at 13.) As discussed above, Pearson has withdrawn this argument.

- 12 -

the future. (*Id.*, Ex. C-4.) Before granting permission for the extension, Bean asked Pearson to verify that the "current number of copies that have been produced is less than 200,000 copies including e-books, and that the distribution was in North America only." (*Id.*, Ex. C-5.) Pearson's representative confirmed that "Yes that is correct." (*Id.*) According to Plaintiffs, based on this representation, Bean granted the extension for an additional 100,000 copies for a fee of 50% of the original licensing fee. (*Id.*) In all, Pearson printed 719,191 copies of the text, despite having licensed only 300,000 copies from Bean. (Doc. 186 at 7; *see* Doc. 186-1.) Pearson's representative, William Hess, acknowledged in his deposition testimony that the statement regarding the print quantity of *Scott Foresman Science*, Grade 3 was either a mistake or a "misrepresentation."[5] (Doc. 186-3 at 266–67.)

Plaintiffs argue that Pearson "systematically requested permissions that were a fraction of Pearson's internal forecasts, as well as a fraction of the circulation of prior editions of a given text." (Doc. 186 at 8.) As an example, Plaintiffs cite the textbook *Earth Science* by Tarbuck-Lutgens. (*See* Doc. 185-3, Ex. C.) Pearson requested permission to include two of Bean's photographs in the 8th edition of the book. (*Id.*) Pearson's evidence shows that it planned to print at least 59,250 quantities of that edition (Doc. 186-4, Ex. D), but only requested permission from Bean to reproduce up to 40,000 copies (Doc. 185-3, Ex. C). Pearson reproduced 108,903 copies. (Doc. 186-2, Ex. A-2.) Pearson forecast that the 9th edition of that text would sell 74,058 copies, but again only requested permission from Bean to reproduce 40,000 copies. (Doc. 186-5, Ex. E; Doc. 185-4.) Pearson ultimately printed 86,518 copies. (Doc. 186-2, Ex. A-2.) Pearson forecast that the 10th edition would sell 67,569 copies. (Doc. 186-6, Ex. G.) It requested permission for only 40,000 reproductions

---

[5] Hess was asked, "Would Pearson acknowledge that advising Mr. Bean that it needed 100,000 more copies bringing the total amount of the permission that it had from him to print his images in the Scott Foresman Science, Grade 3, 2005 edition book to 300,000 copies when it had already printed 683,000 copies was a . . . misrepresentation?" He replied, "So I said it appears that way." (Doc. 186-3 at 266:12–267:24.)

- 13 -

from Bean (Doc. 185-5, Ex. H), and sold 121,836 copies (Doc. 186-1, Ex. A-1). This pattern was repeated with the 11th edition and 12th editions of the text, with Pearson requesting permission to print 40,000 copies, notwithstanding much higher forecasts, and ultimately printing copies well in excess of the projected numbers. (See Doc. 186-7, Ex. I; Doc. 185-6, Ex. J; Doc. 186-1, Ex. A-1 at 2–3, 11–22; Doc. 186-8, Ex. L; Doc. 185-7, Ex. K; Doc. 186-1).

Pearson contends that Plaintiffs have "no independent factual basis for [the] claim that Pearson knew at the time it requested particular licenses that it was going to exceed them, and discovery has revealed no support for this claim." (Doc. 171 at 14.) Pearson is correct that "fraud is never presumed, but must be proven by clear and satisfactory evidence. *Transamerica Ins. Co. v. Trout*, 145 Ariz. 355, 360, 701 P.2d 851, 856 (App. 1985). "Direct proof of fraud, however, is not required. A party can meet its burden of proof by showing circumstantial evidence through which fraud may reasonably be inferred." *Premier Financial Services v. Citibank (Arizona)*, 185 Ariz. 80, 85, 912 P.2d 1309, 1314 (App. 1995).

Pearson further argues that a fraud claim must relate to a past or existing fact and cannot be based on unfulfilled promises or statements concerning future events. (Doc. 171 at 15.) However, "[u]nfulfilled promises may form the basis for actionable fraud where made with the present intention not to perform." *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, 985 P.2d 556, 562 (App. 1998) (quoting *Sun Lodge, Inc. v. Ramada Dev. Co.*, 124 Ariz. 540, 542, 606 P.2d 30, 32 (App. 1979). "If a promise is made without present intention to perform, the misstatement of the present intention is regarded as a misrepresentation of fact that will support a claim for fraud." *Frank Lloyd Wright Foundation v. Kroeter*, 697 F.Supp.2d 1118, 1130 (D.Ariz. 2010) (quotations omitted).

Pearson argues that these erroneous forecasts are not evidence of knowing and intentional misrepresentation, and that the parties' course of dealing does not support such a finding. (Doc. 189 at 5.) Pearsons asserts that it had "little incentive . . . to understate its distribution projections because Plaintiffs charged diminishing incremental fees for increased

distribution rights." (*Id.* at 6.) Pearson also argues that if it had wanted to defraud Plaintiffs it could have sought to license images for the smallest available distribution quantity. (*Id.*) In opposing Pearson motion for summary judgment, however, Plaintiffs are not required to show the issue will be resolved conclusively in their favor, but only that the parties' versions of the truth require resolution by a judge or jury at trial. *Liberty Lobby*, 477 U.S. at 248–49.

The Courts concludes, taking all reasonable inferences in Plaintiffs' favor, that Plaintiffs have submitted sufficient evidence to create a material factual dispute with respect to their fraud claims, so that summary judgment is precluded. As in *Wood*, a jury could find that the license requests and the limits set forth therein "constituted a promise concerning a future act." 589 F.Supp.2d at 1251. A jury could also find that Pearson knew, when making the requests, that it would exceed the limitations set forth in the licensed and its promise was coupled with a present intention not to perform. *See id.*

Finally, Pearson argues that it is entitled to summary judgment because damages are an essential element of Plaintiff's fraud claims and "Plaintiffs have failed to provide any evidence or computations of their damages" as required by Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. (Doc. 171 at 16–17.) Plaintiffs counter that they disclosed a fraud damages spread sheet to Pearson March 26, 2013. (Doc. 186 at 14.) Prior to that, Plaintiffs had provided the formula they would use to calculate damages and were awaiting discovery from Pearson to complete their calculations. (*Id.*)

Rule 26(a)(1)(A)(iii) requires parties to make initial disclosures, including a computation of damages. Rule 37(c)(1) provides that if a party fails to provide disclosure under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Here, any delay in disclosure of Plaintiffs' fraud damages calculations is harmless. Pearson suffers no prejudice or surprise from the delayed disclosure, which occurred while discovery was still ongoing and before a trial date had been set. *See, e.g.*, *NW Pipe Co. v. DeWolff, Boberg and Associates, Inc.*, No. EDCV-10-840-GHK (DTBx), 2012

WL 137585, at *2 (C.D.Cal. January 17, 2012) ("Courts are more likely to exclude damages evidence when the belated disclosure would require a new briefing schedule and the reopening [of] discovery."). Moreover, there was no bad faith or willfulness involved in the late disclosure. Therefore, any violation of Rule 26(a) is not a basis for granting summary judgment in Pearson's favor.

## **CONCLUSION**

Pearson has not presented any specific facts showing that there is a genuine issue for trial with respect to Plaintiffs' copyright infringement claims. In responding to Pearson's motion for summary judgment, Plaintiffs have presented specific information showing that material questions of fact exist with respect to their fraud claims.

Accordingly,

**IT IS ORDERED GRANTING** Plaintiffs' Motion for Partial Summary Judgment (Doc. 165). Summary judgment is **GRANTED** to Plaintiffs on the issue of Pearson's liability for copyright infringement for each instance listed in Exhibits A and B to Plaintiffs' motion.

**IT IS FURTHER ORDERED DENYING** Pearson's Cross-Motion for Summary Judgment (Doc. 170)

DATED this 11th day of June, 2013.

Paul G. Rosenblatt
United States District Judge